Tad R. KNOWLES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 5039.

United States Court of Appeals Tenth Circuit.

May 25, 1955.

Rehearing Denied June 22, 1955.

Everett E. Smith, Denver, Colo., for appellant.

Robert S. Wham, Denver, Colo. (Donald E. Kelley, Denver, Colo. and Robert D. Inman, Boulder, Colo., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a conviction and concurrent sentences on an indictment containing two counts, the first of which charged the appellant with having made and filed a materially false income tax return with the Collector of Internal Revenue for the District of Colorado, for the calendar year 1950 in violation of 26 U.S.C.A. § 3809(a). The second count charged the appellant with knowingly making or causing to be made a false and fraudulent statement and representation to agents of the Internal Revenue Service of the United States Treasury Department in violation of 18 U.S.C.A. § 1001.

The appellant did not choose to be a witness in his own behalf in the trial of the case, and in the first point on appeal he charges that the argument of counsel prejudicially called the jury's attention to his failure to take the witness stand.

The evidence showed, without dispute, that in the taxable year 1950, appellant received the sum of $3,570.00 from the sale of sheep which he did not report in his return for that year. On argument, counsel for appellant intimated to the jury that the appellant received the item as an agent for someone else, and was therefore not reportable as income. In the closing argument, counsel for the government answered the insinuation by saying that there was "not the slightest bit of explanation given to the Internal Revenue Department about it, or given to you. Now it was easy to explain to Mr. Coard [Internal Revenue Agent]; could be easy to explain to you, but it hasn't been done." The jury was asked to consider the matter from a standpoint of a statement having been filed with the government by the taxpayer both on a return and a net worth statement. And then counsel said, "He had every opportunity in the world given to make an explanation of it, to prove it was in error, to cast doubt upon it. And it wasn't done. Consider the sheep sale item, and opportunity given there, and no explanation given of that. And it was so easy to do if it were the truth."

■■ It is concededly improper and reversible error to comment on the failure of a defendant to testify in his own behalf, and the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. Morrison v. United States, 8 Cir., 6 F.2d 809. It is not improper for the government to draw attention to the failure or lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify. Thus, when counsel for the defendant moved for a mistrial or objected to the statement of counsel after the jury had been instructed, the court observed that it was perfectly proper to comment on the lack of evidence if he didn't comment on the failure of the defendant to give it, and that in his judgment counsel for the government did not refer to the failure of the defendant to testify. The jury was also told as a part of its instructions that anyone charged with a crime had a right to testify in his own behalf or not, and the mere fact that he failed to testify in his own behalf should not be counted against him or influence the jury in any manner. Appellant concedes the general rule, applicable in federal courts, that prompt and emphatic condemnation by the trial judge may cure an improper argument of government counsel. See Annot. 84 A.L.R. 784, Sub-section VI, p. 795. He contends, however, that here the comment of counsel was so palpably improper as to be incurable by the conventional instruction.

■ In the first place, the trial court was correct in its view that the comment of counsel was not directed to the failure of the appellant to testify, but was primarily directed to the failure of the evidence to furnish any explanation for the unreported receipt of the $3,570.00. Counsel for the government merely answered appellant's insinuation that he had received the money as an agent for someone else. If, however, the challenged comment can be said to have the effect of focusing attention on appellant's failure to testify, we think it was cured by the court's instructions in that respect.

■■ The appellant next challenges the sufficiency of the evidence to prove that the omission of the $3,570.00 item constituted a knowingly false return. Of course failure to file a correct return does not necessarily constitute a fraudulently false return. See Davis v. Commissioner, 10 Cir., 184 F.2d 86, 22 A.L.R.2d 967. The omission or inaccuracy must relate to a knowingly material matter. But here the evidence shows without dispute that the appellant received the money from the sale of the sheep and deposited it in his account; and, his work sheets

show that it was income to him. There was only an insinuation that he received it for someone else, and the jury was fully justified in finding that it was income and that the appellant knew that it was reportable income. This is not a case like Davis v. Commissioner, supra, it is simply a case where the failure to report a large item of income justified a permissible inference that it was material and knowingly omitted.

During an investigation by the Internal Revenue Department of appellant's income tax liability for the years 1945 to 1950, inclusive, the appellant was examined orally by the Internal Revenue Agent. During one of these examinations he was asked to submit a net worth statement for the five years in question. In collaboration with his certified public accountant, and based upon information furnished by the appellant, the accountant submitted the net worth statement signed by the appellant and his wife. This statement showed the sale in 1949 of land in Elbert County, Colorado, for the sum of $45,000.00 with a cost basis in 1943 of $25,000.00, and an additional cost of $5,000.00, making a total cost of $30,000.00 and a net gain of $15,000.00. The evidence showed without much dispute that the cost of the land in question was $10,000.00, not $25,000.00, and that any additional cost was in the form of improvements contributed by his own labors. The evidence also showed that while the investigation was in progress, the appellant contacted the real estate agent who handled the transaction, suggesting that he gave $10,000.00 in cash and "$10,000.00 in bulls and wet cows". When the agent replied that he paid cash for the land, the appellant said in effect, "well, I guess you can't help me."

Appellant attacks his conviction on count 2 on two grounds. First, that Section 1001, under which the indictment is laid, does not reach oral and voluntary statements made to investigating officers which are not required by law, rule or regulation to be given to an agency or department of the United States government. The statute says in effect that whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false or fraudulent statements or representations, shall be punished as provided therein. Until the enactment of Section 1001, the law condemned only the making of false claims for the purpose of pecuniarily defrauding the government and the purpose of the Amendment in 1934, Act of June 18, 1934, 48 Stat. 996, was "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 522, 85 L.Ed. 598. See also United States v. Bramblett, 1955, 348 U.S. 503, 75 S.Ct. 504. The Gilliland case involved false statements made to the Department of Interior in pursuance of valid rules and regulations. The Bramblett case involved false and fraudulent representations made to the Disbursing Office of the House of Representatives, apparently for the purpose of obtaining disbursements for the defendant's benefit.

It is said, however, that a statement not made in obedience to law, rule or regulation is not a matter within the jurisdiction of a department or agency of the United States within the meaning of the statute, and taking that view in United States v. Levin, 133 F.Supp. 88, from the District of Colorado, Judge Pickett dismissed an indictment based upon a false statement made to an agent of the Federal Bureau of Identification. Judge Chesnut was of like mind in United States v. Stark, 131 F.Supp. 190, also involving a statement to an agent of the Federal Bureau of Identification. Applying the rule of ejusdem generis, he construed the critical word "statement" in the statute as partaking of the word "representation" which followed it in the text. Given this connotation, the court took the view that in its statutory sense, the word "statement" contemplated an

affirmative statement voluntarily made for the "purpose of making claim upon or inducing improper action by the government against others."

The identical question was presented under facts indistinguishably similar to ours in Cohen v. United States, 9 Cir., 201 F.2d 386. There, the court referred to Marzani v. United States, 83 U.S.App. D.C. 78, 168 F.2d 133, affirmed by an equally divided court, 335 U.S. 985, 69 S.Ct. 299, 93 L.Ed. 431, where a state department employee voluntarily sought an interview with his superior officer to discuss a request which had been made for his resignation. The court sustained the prosecution for false oral statements made in that interview despite the fact that the employee was not required to attend such an interview or make the statements. And, after observing that the statements in both cases were voluntarily made, the court in the Cohen case stated [201 F.2d 392], "The Treasury Department had been investigating appellant's income tax liability. Treasury agents had requested a statement relating to his financial affairs. The document in question was signed only after a discussion of nearly an hour as to various items therein." The court pointed out that the defendant was fully conscious of the consequences of his willfully false statements, and the conviction was sustained on the theory that an investigation of income tax liability by an authorized internal revenue agent was a matter within the jurisdiction of a department or agency of the United States within the meaning of Section 1001.

If the court in the Cohen case intended to embrace the full sweep of the Marzani case, it was under no necessity of doing so in the affirmance of the conviction there, for there is undoubtedly a decisive difference in a voluntary oral statement made to a superior officer in an informal interview as in the Marzani case and a deliberate statement made by a taxpayer concerning his taxable income to a revenue agent who he knew was conducting an investigation of the correctness of his returns. In any event, we recognize a valid difference in the two cases, and we prefer to place our affirmance of this judgment squarely upon the premise that the statement was made in pursuance of statutory requirements.

Every individual having for a taxable year a gross income for a prescribed amount is required to make a return under penalty of perjury. 26 U.S. C.A. § 51. And, every person liable to pay any tax or for the collection thereof is required to "keep such records, render under oath such statements * * * and comply with such rules and regulations, as the Commissioner * * * may from time to time prescribe." 26 U.S.C.A. § 54. And, every internal revenue agent "shall see that all laws and regulations relating to the collection of internal revenue taxes are faithfully executed and complied with, and shall aid in the prevention, detection, and punishment of any frauds in relation thereto." 26 U.S.C.A. § 3654. In the pursuance of these statutory duties, the internal revenue agent is not only authorized to inquire in an investigative capacity but to "administer and enforce" the revenue laws. Carroll Vocational Institute v. United States, 5 Cir., 211 F.2d 539, 540; Cf. United States v. Zavala, 2 Cir., 139 F.2d 830. It follows, we think, that a "statement" to an internal revenue agent in the course of an authorized inquiry into the correctness of the taxpayer's returns is a statement made "within the jurisdiction of any department or agency of the United States". See United States v. Beacon Brass Co., 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61; Walker v. United States, 10 Cir., 192 F.2d 47; Mitchell v. United States, 10 Cir., 143 F.2d 953. We therefore conclude that count 2 stated an offense against the laws of the United States.

The materiality of the statement was challenged, but there can be no doubt of it.

The judgment is affirmed.