STATE OF NORTH CAROLINA v. JAMES RUFUS HAMILTON AKA ELIJAH COOLEY

No. 8112SC228

(Filed 15 September 1981)

**1. Constitutional Law § 74; Criminal Law § 48— no comment on defendant's exercise of right to remain silent**

In describing the circumstances under which an officer discovered the true name of the defendant, who had given officers an alias when arrested, the officer's testimony, "He didn't want to talk to us so we were taking him back to the booking room," did not constitute an improper comment on defendant's exercise of his post-Miranda right to remain silent, since the statement was not manifestly intended and was not of such character that the jury would naturally and necessarily take it to be a comment on defendant's exercise of his right to remain silent. Furthermore, even if the statement constituted an

improper comment on defendant's exercise of his post-Miranda right to remain silent, the admission of the statement constituted harmless error beyond a reasonable doubt since the witness's comment was not extensive, no inference of guilt from silence was stressed to the jury, and the admission of the statement could not have contributed to defendant's conviction.

**2. Assault and Battery § 13; Robbery § 3.2 — weapon found at crime scene four months later — introduction as harmless error**

In a prosecution upon indictments charging armed robbery and assault with a deadly weapon inflicting serious injuries, defendant was not prejudiced by the introduction of testimony concerning the discovery of a sock containing two pieces of concrete at the crime scene some four months after the crimes occurred where the trial court granted defendant's motion to strike the testimony and instructed the jury to disregard it because the State failed to connect such "weapon" with the crimes charged, and where the State thereafter took dismissals on the original charges and proceeded on lesser charges of common law robbery and assault inflicting serious injuries for which the existence of a "weapon" was not a necessary element.

APPEAL by defendant from *Herring, Judge.* Judgment entered 17 October 1980 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 4 September 1981.

Defendant was indicted upon the charges of armed robbery and assault with a deadly weapon inflicting serious injuries. The trial court granted motions for dismissal on both offenses and the case proceeded as to the lesser included offenses of common law robbery and assault inflicting serious injury. Prior to trial defendant moved to exclude from the jury any reference to the defendant's exercising his right to remain silent or to his refusal to make a written statement. This motion was granted. From a verdict of guilty on both counts, the defendant appeals.

The record discloses the following facts:

Shortly after 3 o'clock on the morning of 1 May 1980, a police officer apprehended two black males approximately two and one-half blocks from the Sheraton Motor Inn in downtown Fayetteville. Both males were wearing dark baseball-type caps; one had braided hair. They appeared to have blood on their clothing. While being frisked by a second officer who had arrived on the scene, one male subject was observed tossing an object under the police vehicle. The object was a gold Quartz Timex watch. Also found on one of the subjects was $68 in cash, $48 of which was concealed in a sock. One of the subjects identified himself as Elijah Cooley, the defendant.

At trial William Simmons testified that he had been the victim of a robbery and assault shortly after 2 o'clock on the morning of 1 May 1980. The incident occurred as Mr. Simmons was returning to his room at the Sheraton Motor Inn in downtown Fayetteville. Shortly before he was struck from behind with what felt like a blunt instrument, Mr. Simmons had seen two black males approaching in his direction. One of the men was wearing a baseball-type cap and had braided hair. A gold Quartz Timex watch and five twenty-dollar bills were taken from the victim. An analysis of blood samples obtained from the victim and from clothing worn by the two male suspects gave rise to the conclusion that the blood types matched.

Defendant offered no evidence on his own behalf.

*Attorney General Edmisten, by Associate Attorney Steven F. Bryant, for the State.*

*Assistant Public Defender, Twelfth Judicial District, Gregory A. Weeks for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant assigns as error the trial court's denial of his motions for mistrial. Giving rise to the motions was the introduction of allegedly inadmissible and prejudicial testimony on two separate occasions during trial.

[1] Defendant first takes exception to the following statement made by the witness, Detective Stankiewicz. The question and his answer were in response to the witness's assertion that it was necessary for the booking officer to change defendant's name on the warrant from Elijah Cooley (an alias) to James Rufus Hamilton.

Q. Now, when did you learn of the name change Rufus Hamilton, sir, in the course of the investigation?

A. After bringing—on the morning of the 5th, after bringing him down from the jail, we read off the warrant to him and we advised him of his rights. *He didn't want to talk to us* so we were taking him back to the booking room. [Emphasis ours.]

Defendant relies on the Supreme Court decisions in *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed. 2d 91 (1976), and *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694 (1966), to support the contention that a violation of his constitutionally guaranteed right to remain

silent warrants a new trial. We find the decision in *Doyle* distinguishable on its facts. In the present case there was no attempt to impeach the defendant concerning his post-arrest silence. *State v. Holsclaw*, 42 N.C. App. 696, 257 S.E. 2d 650 (1979). The holding in *Doyle* is significant, however, in that it affords force of law to dictum in *Miranda:*

> In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.

384 U.S. at 468 n.37. *See State v. McCall*, 286 N.C. 472, 212 S.E. 2d 132 (1975).

In order to determine the appropriateness of the trial court's denial of defendant's motion for mistrial based on Detective Stankiewicz's statement, two questions must be answered. (1) Did the statement constitute an improper comment on the defendant's post-*Miranda* right to remain silent? (2) In so allowing the statement to be made in the presence of the jury, was there error of such prejudicial magnitude that defendant's right to a fair trial has been violated?

We have reviewed the North Carolina cases dealing with whether a statement made at trial constitutes an improper comment on the exercise of a defendant's right to remain silent. In so doing we have noted the absence of any definitive test which might provide guidance. In *State v. Taylor*, 289 N.C. 223, 228, 221 S.E. 2d 359, 363 (1976), the Court held a comment not improper, relying on the fact that the remarks made did not "specifically point to" a defendant's failure to testify and that "an average juror would not so interpret them." In *State v. Peplinski*, 290 N.C. 236, 251, 225 S.E. 2d 568, 576 (1976), the Court found no improper comment "so long as no direct reference is made to the right of the defendant to testify and his failure to do so." *See also State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10 (1976).

We find the language in these cases consistent with the test set out in *Knowles v. United States*, 224 F. 2d 168, 170 (10th Cir. 1955), a case which also concerned a comment on the failure of an accused to testify. However, we believe the test is equally applicable to the question presented in this case. In applying the *Knowles* test, we must consider whether "the language used was manifestly intended or was of such character that the jury would

naturally and necessarily take it to be a comment" on a defendant's exercise of his post-*Miranda* right to remain silent. Implicit in the test is an examination of both the prosecutor's intentions and the natural meaning of the statement as perceived by the jury. Taken in context, we cannot find that Detective Stankiewicz manifestly intended his statement to be a comment on defendant's exercise of his right to remain silent. The statement was not obviously motivated by a desire to punish the exercise of defendant's constitutional right to remain silent when arguably there existed a rational non-vindictive purpose—the witness was attempting to describe the circumstances under which he discovered the defendant's true name. Moreover, again viewing Detective Stankiewicz's statement in the context of his other testimony, we cannot conclude that the jury would have naturally and necessarily viewed the statement as a comment on defendant's exercise of his right to remain silent. Unaware that the statement was made in technical violation of defendant's motion *in limine,* and presumably unaware of the legal implications of the statement, a jury would likely treat it as nothing more than an insignificant offhand remark of little consequence.

Assuming, arguendo, that there is a basis for finding Detective Stankiewicz's statement to be an improper comment on defendant's post-*Miranda* right to remain silent, we now consider whether allowing the statement constituted error harmless beyond a reasonable doubt. As a reviewing court we first consider whether such comment is extensive and whether an inference of guilt from silence is stressed to the jury as a basis for conviction. *Anderson v. Nelson,* 390 U.S. 523, 20 L.Ed. 2d 81 (1968) (per curiam). At the outset it should be noted that the defendant in this case offered no testimony on his own behalf. As pointed out in *Lakeside v. Oregon,* 435 U.S. 333, 55 L.Ed. 2d 319 (1978), inference of guilt from silence whether there is comment or not may be inevitable. Thus, defendant's failure to testify at trial could very well have been more damaging to his case than any silence, commented on or not, which he constitutionally exercised before trial. *State v. Peplinski, supra.*

We find that the witness's comment was not extensive. No inference of guilt from silence was stressed to the jury. The defendant was not penalized for exercising his fifth amendment privilege while under police custodial interrogation.

Our second consideration is whether the admission of the statement contributed to defendant's conviction. *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705 (1967). In determining whether violation of a defendant's constitutional right to post-arrest silence met the test of harmless beyond a reasonable doubt, the Court in *State v. Castor,* 285 N.C. 286, 292, 204 S.E. 2d 848, 853 (1974), wrote:

> The fact that, exclusive of the erroneously admitted evidence, there was plenary evidence to support the verdict is not determinative. The test is whether, in the setting of this case, we can declare a belief that the erroneously admitted evidence was harmless beyond a reasonable doubt, that is, that there is no reasonable possibility the admission thereof might have contributed to the conviction.

Viewing the record in its entirety and considering the nature and extent of Detective Stankiewicz's statement, we find there is no reasonable possibility that its admission contributed to the conviction.

It should also be noted that if an improper comment is made during trial, the error may be cured "by a withdrawal of the remark or by a statement of the court that it was improper, followed by an instruction to the jury to disregard it." *State v. Peplinski, supra,* at 252, 225 S.E. 2d at 577. *See also State v. Mc-Call, supra; State v. Taylor, supra.*

[2] Defendant next excepts to the introduction of testimony relating to the discovery of a weapon purportedly used in the commission of the robbery and assault. No weapon was discovered during the initial investigation of the crime. On 26 August, nearly four months later, police returned to the area and within minutes found a dirty white sock containing two pieces of concrete. The state offered no explanation of how they were able to locate the "weapon" or what relevance this discovery had to the robbery and assault they had investigated on 1 May. Based on these omissions the trial court granted defendant's motion to strike the testimony, denied defendant's motion for mistrial, and instructed the jury in firm and unequivocal terms to disregard all evidence relating to a sock containing two pieces of concrete. At this point the state took dismissals on the original charges of

armed robbery and assault with a deadly weapon inflicting serious injuries and proceeded as to the lesser included offenses. Thus, the existence of a "weapon" was no longer a necessary element of the offenses. In light of the evidence taken as a whole, we cannot agree that defendant has met his burden in showing any prejudicial effect of this testimony. *State v. Sledge*, 297 N.C. 227, 254 S.E. 2d 579 (1979); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969).

No error.

Judges MARTIN (Robert M.) and BECTON concur.